THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
JUAN VÁZQUEZ SUÁREZ, Defendant and Appellant.

No. 12407. Argued December 2, 1947.—Decided January 26, 1948.

64

*Ernesto Ramos Antonini, Samuel R. Quiñones* and *José R. Fournier,* for appellant. *Luis Negrón Fernández, Attorney General,* and *J. Rivera Barreras, Prosecuting Attorney,* for appellee.

Mr. Justice Snyder delivered the opinion of the Court.

This case is with us for the second time. The defendant was charged with murder in the first degree. He was tried, convicted by a jury of voluntary manslaughter and sentenced

to eight years in the penitentiary. On appeal we reversed the judgment and ordered a new trial. *People* v. *Vázquez,* 66 P.R.R. 393.

Again he was tried for murder in first degree, convicted by a jury of voluntary manslaughter and sentenced to imprisonment from eight to ten years. Once more he has appealed, assigning twenty-six errors.

 The 1st and 2nd errors are based on the action of the district court in excusing the day before the trial of this case the regular jury panel, consisting of 31 jurors, for the remainder of the term, and in ordering the drawing of a regular panel of 24 jurors, an extra panel of 12 jurors and a special panel of 20 jurors. The lower court took this action during the trial of another murder case. When the jury in that case was about to retire to begin its deliberations, the court ordered the aforesaid new regular and special panels to be drawn because "there are a number of murder cases of some importance and there are not sufficient jurors to hear the murder cases."

As to the 12 deliberating jurors, the court may have thought they might not conclude their deliberations before the present case began. The fact that they actually returned their verdict before this case began does not necessarily make the action of the lower court excusing them erroneous. Or the court may have felt that these 12 jurors had already rendered sufficient service during that month and deserved release from further duties. The court may have likewise excused the remainder of the 31 jurors on the panel for this last reason.

In any event, the contention of the appellant is answered by our language in *People* v. *Pérez,* 47 P.R.R. 724, 729: "With regard to the selection of the twelve jurors who acted in the case and rendered the verdict, the court could have availed, without doubt, of the jurors who had been already cited for other cases. It did not do so. It ordered the summoning of

a new regular panel and of two special ones which became necessary by virtue of the great number of challenges. Under the attendant circumstances, we do not think that the court so departed from the procedure prescribed in the law nor that it exercised its discretion in such a manner as to justify the conclusion that it violated any fundamental right of the defendant. No prejudice was shown.'' See §§ 199 and 202, Code of Criminal Procedure.

The appellant contends that the *Pérez* case is inconsistent with §§ 199 and 202. His argument is that pursuant to § 202 additions may be made to the regular panel, but that the regular panel after a period of service cannot in the discretion of the court be excused from further service in order to be replaced by an entirely new enlarged panel. We find no such limitation on the discretion of the trial court in § 202 and reaffirm our ruling in the *Pérez* case. Nothing we said in *People* v. *Morales,* 66 P.R.R. 9, 12 is in conflict with the *Pérez* case.

■ The 3rd, 4th, 5th and 22nd errors all involve the same point. The appellant argues that the lower court erred in overruling his contention that his conviction at the first trial for voluntary manslaughter was in legal effect an acquittal of murder in first and second degrees, and therefore to try him here for murder in the first degree placed him in jeopardy twice for the same offense.

The Circuit Court of Appeals has held, affirming our judgment in *People* v. *Carbonell,* 36 P.R.R. 474, reconsideration denied, 36 P.R.R. 684, that after a trial on a charge of murder, conviction of manslaughter, and reversal on appeal, a defendant was not placed in double jeopardy when the new trial was for murder, and was not limited to manslaughter. *Carbonell* v. *People of Porto Rico,* 27 F.(2) 253 (C.C.A. 1st, 1928). To the same effect, Miller on Criminal Law, § 187, p. 543, and cases cited in footnotes 55 and 57. See § 302, Code of Criminal Procedure; *People* v. *Colón,* 65 P.R.R.

714. We do not agree with the appellant that the language found in *People* v. *Torres,* 39 P.R.R. 547, 549, constitutes a reversal of the *Carbonell* case.

▉ The 13th error is related to these last errors. The defendant argues here that the district court erred in refusing to permit him to argue his motion that he could not be prosecuted for murder in view of the previous conviction of manslaughter. This motion had been made in writing and had already been overruled. When the defendant attempted to renew it while the jury was being selected, the court pointed out that the matter was foreclosed by the *Carbonell* case and its previous ruling in writing and refused to hear argument on the question.

The appellant relies on *People* v. *Díaz,* 67 P.R.R. 74. That case is wholly inapplicable. We held there that a court could not refuse to hear argument on the merits of a case after the case was closed. We know of no rule requiring a court ·to hear argument in the presence of the jury on every point of law counsel might conceivably raise during the trial of a case. This is particularly true where as here the point had already been made in writing and had been overruled as a matter of law because the contention was clearly untenable by virtue of a decision of this Court directly in point.

▉ The 6th error is directed against the refusal of the district court to postpone the taking of the oaths of the jurors until all the challenges of the parties had been exhausted. We have held that this question rests in the discretion of the district court. *People* v. *Torres,* 48 P.R.R. 38. ''And only if we found that the use of the system preferred by the district court was an abuse of its discretion, prejudicing the rights of the defendant under the facts of this particular case, would we be justified in reversing the judgment on this ground.'' *People* v. *Morales,* 66 P.R.R. 9. No abuse of discretion was shown here.

██ ██ The 7th error relates to the exclusion of Joaquín Torres as a juror. On the *voir dire* of this juror, the following occurred: "Defense: What is the name of the other gentleman? —A. Joaquín Torres. —Q. Where is Mr. Torres from? —A. From Corozal. —Q. What does he do? —A. I am a cigar maker. —Q. Does Mr. Torres know the facts of this case? —A. Yes, sir, I know them. —Q. Did he know Mr. Alfredo San Miguel? —A. I did not know Mr. San Miguel. —Q. Do you know the defendant? —A. I know the defendant. —Q. Is Mr. Torres in condition to render a fair and impartial verdict in accordance with the testimony adduced in this case? —A. No, sir. —Q. You are not in that condition? —A. I am not in that condition. —Q. Is that attitude of the juror due to the fact that he has information about the case? Do you know the case? —A. I know it. —Q. Do you know the case by information? —A. By information, yes, sir. —Q. Could not the juror render a fair and impartial verdict in this case? —A. No, sir, I am not in condition to do so. —Q. You have formed an opinion? —A. Yes, sir. —District Attorney: No objection to the challenge for cause of Mr. Torres. —Defense: I have not made a challenge. —The Court: The court excuses him because this man has said that he is from Corozal; that he knows the facts; that he has formed an opinion; although counsel is not opposed to his leaving, the court believes that this gentleman having formed an opinion ought not be a juror to try this or any other case. The court excuses him. You may go until Monday. —Defense: Exception."

We are unable to agree with the defendant that the action of the court comes within the rule laid down in the first appeal of this case. *People* v. *Vázquez, supra.* Unlike the facts there, the district court did not challenge peremptorily the juror on its own account because of answers to questions which could not have been the basis of a challenge for cause. Here the juror, in response to questioning by the defendant, stated

three times that he was not in a position to render a fair and impartial verdict. Section 226, par. 2; § 227, par. 7, Code of Criminal Procedure.([1]) It is true the defendant indicated he was not challenging the juror for cause. But there is no rule which requires the court to leave on a jury a person who repeatedly states that he cannot serve impartially merely because the parties do not challenge him. On the contrary, under these circumstances the district court may act *sua sponte* and in its discretion excuse the jury. Cf. *People* v. *Cruz*, 60 P.R.R. 112; *People* v. *Gracia*, 31 P.R.R. 861; *People* v. *Morales, alias Yare Yare*, 14 P.R.R. 227. In the *Morales* case we pointed out that (p. 235) " . . . the court may, of its own motion, for any good reason, excuse a qualified juror from sitting on the panel in a criminal case . . .".

In arguing this error, the defendant contends that his interrogation of Torres was interrupted by the district attorney, and that he had a right to complete his questioning of the juror in order to demonstrate that the latter could serve impartially despite his opinion; i.e., that the opinion would yield to the evidence. See *Walker* v. *Greenberger*, 63 Cal. App. (2) 457, 463–64 (Calif., 1944). However, although counsel for the defendant had ample opportunity to ask the juror this question, he never did. He did not request permission to ask this or any other additional questions. He simply confined himself to taking an exception to the ruling of the court. His silence undoubtedly led the court to believe

that he had no further questions. Under those circumstances he cannot now complain that if he had pursued the matter further the juror might have changed his statement, which he had made three times, that he could not serve impartially.

■ The 8th error is substantially similar to the 7th error. Raúl Ramírez, another prospective juror, testified on the *voir dire,* in response to questions of the district attorney, that because of his friendship for Alfredo San Miguel, the victim in this case, and his family, he was not "in condition to judge this case, to weigh the testimony and to render a fair and impartial verdict." The court thereupon excused him.

The defendant asserts that the court excluded this juror without a challenge and without giving the defendant, an opportunity to examine the juror. Perhaps the court acted somewhat hastily in excusing the juror before he was questioned by counsel for the defendant. But under these circumstances, counsel for the defendant may not remain silent. It is his duty to indicate affirmatively that he wishes to question the juror. Indeed, the defendant did not even object or take exception to this action of the court. On the record before us the district court did not abuse its discretion in excusing a juror who affirmed that he could not render a fair and impartial verdict.

■ The 9th error involves the exclusion of José Taboas as a juror. He testified that his wife was a cousin of the defendant, and that he had formed an opinion on the facts, which could be changed by the testimony.

We need not determine if the *Fiscal* of this Court is correct in arguing that Taboas could be challenged for cause because of his opinion or pursuant to § 227, par. 2, of the Code of Criminal Procedure. We understand his statement to mean that his wife is a first cousin of the defendant. He was therefore related by affinity within the fourth degree to the defendant and could be challenged for implied bias under § 227, par. 1. *Cambron* v. *State,* 137 S.E. 780 (Ga., 1927); *People* v.

*Schmitz,* 94 P. 407 (Calif., 1908) ; 12 Am. St. Rep. 108. See *State* v. *Thomas,* 174 S.W. (2) 337 (Mo., 1943) ; 18 A.L.R. 375 ; 19 A.L.R. 1410 ; 99 A.L.R. 672.

The 10th error concerns the action of the district court in excusing Daniel Calderón as a juror. On his *voir dire,* he told counsel for the defendant the following : ''Q. Mr. Calderón is in condition to render a fair and impartial verdict in this case? —A. Yes, sir. —Q. Do you know the facts of this case? —A. I know something about the case. I have formed an opinion about the case. I have commercial relations with Juan Martínez and Juan Rodríguez of the town of Corozal and they have informed me of the case. —Q. So that Mr. Calderón is not in condition to act as a juror in this case? —A. I am not in condition because I know the facts as they have been told to me. —Q. Do you have an opinion formed? —A. Yes, sir. —Q. So that you are not in condition to be able to render a fair and impartial verdict in accordance with the testimony adduced in this case? —A. No, sir. —Q. But could this opinion that you have formed be varied by the testimony adduced in this case? —A. It may be that with the testimony it could be varied. —Q. So that it is not a settled opinion? —A. No, sir.''

In response to questioning by the district attorney, the following occurred : ''Q. Mr. Daniel Calderón is from Toa Alta? —A. Yes, sir. —Q. It seems to me that I heard you answer in response to a question of my brother attorney that you had formed an opinion in connection with the facts of this case? —A. Yes, sir. —Q. That opinion Mr. Calderón has formed on the basis of what? —A. Well, in accordance with an exchange of views that I had with people from Corozal. I was in Corozal where the facts occurred; I visited Corozal and persons from Corozal that have relations with me told me the facts; they told me how the facts happened, they informed me. . . —Q. And besides, have you read the press? —A. Yes, sir, I have read what the press said. —Q. And

all that has made you form an opinion? —A. I think so.
—Q. Do you think so or are you sure that you have formed an
opinion? —A. I am sure that I have formed an opinion.
—The Court: The court believes that the juror ought to be
excused from serving in this case. —Defense: Exception,
and we understand (*sic*) for the record because there has
been no challenge by either of the parties.''

Here the issue is somewhat closer. The juror did not
indicate that his opinion could not be changed by the evi-
dence. On the other hand, neither did he indicate in an
affirmative manner that his state of mind was such that his
opinion would yield once he heard the evidence. And he
stated twice that he was not in a position to render a fair
and impartial verdict. The case is in the twilight zone where
the discretion of the lower court comes into play. The dis-
trict court heard and observed the juror. It was apparently
convinced that the vacillation of the juror in discussing his
opinion warranted excusing him. Under all the circumstances,
we cannot say the district court abused its discretion.

The 11th error involves the action of the district
court in excusing Manuel Angel Monclova. This juror in-
formed the court that he was receiving ''compensation'' be-
cause he had served as a soldier, and he did not know if
according to the law he could serve as a juror and receive
a check for his services as a juror. The court replied:
''Don't worry: service as a jury is a service which you render
to the cause.''

Subsequently, the following took place: ''Juror Manuel
Angel Monclova: May I say something?—The Court: Of
course.—Juror: Upon receiving the fee here as a juror, that
is money I have to report to the Federal government and
that has me worried in such a form that on receiving the
money I have to report it to the association and I have not
had time. I arrived at my house at 9 p.m. That has me
worried.—The Court: The Court tells the juror that he is
not going to commit any crime and that he does not have to

be worried.—Defense: We want to know if the juror is still worried?—Juror: I still am.—Q. Are you still worried?—A. Yes, sir.—Q. That worry prevents you from being tranquil and serene here?—A. Yes, sir.—District Attorney: We agree that the court should excuse him for cause.—The Court: The court excuses him for that reason."

Here again we have a situation where we must rely largely on the discretion of the trial court. It is difficult for us to determine if the preoccupation of the juror was so great that it required excusing him. We can only say we find no abuse of discretion by the court. This is particularly true where as here the defendant remained silent when the district attorney suggested that the juror be excused. He asked no further questions, and neither objected nor excepted.

■ The 12th error concerns the ruling of the district court in excusing Luis Monclova Monge. This juror testified, when questioned on the *voir dire* by counsel for the defendant, as follows: "Q. Does Mr. Monclova know the facts that are going to be adduced today?—A. I know them from all angles. —Q. Do you know the defendant from all angles?—A. Yes, sir: by the press and from friends of mine from Corozal I know him. I go to Corozal and I see my friends and the last time I was there one of my friends talked to me about the case.—Q. Were you one of the jurors who participated in the other case?—A. Yes, sir.—Q. Could you advise me if you have formed an opinion in this case?—A. Yes, sir.—Q. Can you act as a juror in this case?—A. No, sir.—Q. Don't you find yourself in condition to weigh the evidence and render a verdict in accordance with the testimony produced in this case?—A. My verdict is already made beforehand.—The Court: You may go until Monday. The Court excuses you.— Defense: We take exception to that."

It is obvious that the lower court did not err in excusing this juror without waiting for questioning by the district attorney or a formal challenge for cause by either party. To

permit such a juror to act would be to make a mockery of the administration of justice.

 The 16th and 17th errors are predicated on the refusal of the lower court to permit the defendant to plead before the jury the defense of former jeopardy and the refusal of the court to declare a mistrial for the same reason. We need not concern ourselves with whether such action might be prejudicial to a defendant under other circumstances. Here the defense of former jeopardy was clearly settled against the defendant as a question of law by virtue of the *Carbonell* case. The defendant therefore suffered no prejudicial harm when the lower court refused to permit him in the presence of the jury to renew that plea, which it had already overruled as a matter of law. See *People* v. *Felicie*, 31 P.R.R. 488; *People* v. *Rivera*, 67 P.R.R. 259, 263.

 During the trial the regular court stenographer became ill and was unable to continue taking the record. He was replaced by a stenographer sent by the Department of Justice. The defendant objected on the ground that the substitution was not "within the law". He assigns as the 18th error the order of the lower court overruling this objection.

In his brief the appellant makes more specific the basis of his objection. He contends that § 2 of Act No. 57, Laws of Puerto Rico, 1930, creates the post of court stenographer of the district court of Bayamón, providing that he shall be appointed by the Governor and confirmed by the Senate, and that since the substitute stenographer had not been appointed by the Governor, he could not legally act in that capacity.

Aside from the fact that the defendant did not state specifically the ground for his objection at the trial, we are unable to agree that the Legislature meant to leave the machinery of the district court paralyzed if a stenographer became ill during a trial. We believe that such an employee may be temporarily replaced by a qualified substitute who need not necessarily be designated by the Governor. In the absence of any showing that he was not qualified or that the

defendant had been prejudiced, we cannot hold that the acceptance by the court of a substitute stenographer sent by the Department of Justice constituted reversible error.

 The 19th error is that the court stated in the presence of the jury that the attorneys for the defendant were making their objections in such a manner that they were telling a witness what he should testify. The defendant in his brief does not give the language of the court or refer us to any specific place in the record. That alone is sufficient to dispose of this error. *People* v. *Benítez*, 47 P.R.R. 74.

Nevertheless, we shall examine this question, on the assumption that the defendant is referring to the following episode: "Attorney Ramos Antonini: We object, Your Honor. That question has already been answered in the sense that he never gave her any explanation about that.—District Attorney: Let my brother attorney permit the witness to say it.—Judge: Yes, you are making an objection in such a manner that you are telling the witness what to answer. I have already told the other attorney . . .—Attorney Ramos Antonini. We respect the intimation of Your Honor.—Judge: If the attorney will forgive me, that is not the legal objection to a question. You should object to a question because it is not pertinent, because it has not been the subject of direct examination, or of proof, or for any of the reasons provided by law, but in objecting you ought not to remind the witness that he has testified in a certain way because that would be reminding the witness indirectly of what he has to answer.—Attorney Ramos Antonini: As a matter of law, it is what Your Honor says. But Your Honor knows that one of the grounds of objection under the law is unnecessary repetition of questions.—Judge: That question was asked only once and a short time ago.—Attorney S. R. Quiñones: If Your Honor will pardon me, we appeal to the record, the same question, in other ways, has been asked on a number of occasions and has been answered. In addition . . .—Judge: The court is going to lay down a rule. When an objection

is made, only one of the attorneys ought to participate, unless a question of law arises in which two attorneys will be given an opportunity.—Attorney Samuel R. Quiñones: In this case my intervention is based on a statement of Your Honor, which this attorney cannot permit to be made, in the sense that this attorney has testified for the witnesses. This attorney understands that he has not done that nor has that been his intention.—Judge: The court was clear a moment ago when it spoke. The members of the jury ought to confine themselves solely to the testimony, without taking into consideration in deciding this case the comments of the parties on what the witnesses have testified; and the words of the judge must not be understood as said in the sense that you must believe in one form or another the witnesses. You are the only judges of the veracity of the witnesses. The district attorney may continue.—Defense: Exception.''

Perhaps the defendant was justified in objecting to the question on the ground that it had already been adequately answered. See *People* v. *Munera,* 39 P.R.R. 267, 272–74; *People* v. *Cardona,* 57 P.R.R. 682. However, we see nothing wrong in the action of the court in pointing out that in making his objection the defendant should not suggest the answer to the witness in the event the court overruled the objection and permitted the witness to answer. In addition, the court cured any possible error by concluding the incident with an admonition to the jury that they were the only judges of the veracity of the witnesses and that the statements of counsel and the court should not affect them on that score.

 The 20th error relates to the refusal of the district court to permit the defendant to ask one of his witnesses, Guillermo Collazo, a question. Collazo was the employer of Jesús Díaz, a previous witness of the defendant. The defendant was endeavouring to show through Collazo that Díaz was familiar with the scene of the alleged crime in Corozal because Díaz was the chauffeur of Collazo in Corozal. The court permitted the defendant to question Collazo on this

subject in the direct examination. After the cross-examination of the district attorney, the defense asked: "Where were you buying gasoline at that time?—Judge: What, are we going to repeat the case now? The court does not permit it.—Defense: Exception."

The defendant argues that this question was introductory in order to show that Díaz bought gasoline near the scene of the events herein. Apart from the fact that the defendant made no such explanation to the court of the purpose of this seemingly irrelevant question, the court had already permitted direct examination of the witness as to the familiarity of Díaz with the streets of Corozal. In its discretion it could refuse to permit the defendant to go over this ground again on redirect examination. *People* v. *Gómez*, 45 P.R.R. 787; *People* v. *Munera, supra; People* v. *Aponte*, 26 P.R.R. 537.

The 21st error is the alleged refusal of the district court to permit counsel for the defendant to deny that he had made certain statements which the district attorney allegedly attributed to him in his argument to the jury and the action of the district court in overruling a motion for mistrial for the same reason.

The record shows that while the district attorney was making his closing argument, the following occurred: "Attorney Ramos Antonini: With the permission of the Court. We wish to make it known that the district attorney is entering into things that I have not said. I have not said to the jury that this is a manslaughter case.—District Attorney: Is the defense going to argue once more to the jury?—Judge: The defense may object to any argument of the district attorney for which there is no basis or which refers to things outside of the testimony. You may oppose this and the court will agree with you if you are right, but if you are going to refute one argument with another, the court will not permit it.—Attorney Ramos Antonini: In order that our objection

to the statements of the district attorney may go into the record, if Your Honor permits: the district attorney attributed to this attorney a statement to the effect that I conceded (according to that argument of the district attorney) that this was not a case of murder but was a case of manslaughter, and he attributed a categorical manifestation to this effect to this attorney. As the stenographers, including those of the court, do not take stenographically the arguments of the district attorney or of counsel for the defendant, contrary to what the law provides, which provides that the stenographer ought to take them, I wish to have it appear that the district attorney was making that statement to the jury, imputing to me a concession that I did not make, and that I have risen to advise the court that I did not make the statement at any time and that the court has not permitted it.—Judge: What the court has said is that you cannot argue while the district attorney is speaking. The district attorney may continue.— Attorney Ramos Antonini: We therefore take exception to the statement of the court and we move at this time for a mistrial as the court has not permitted this attorney to deny something that he has not said and that if the jury believed it, because of lack of memory, it might mean a conviction of the defendant for manslaughter.—Judge: You cannot utilize the time that belongs to the district attorney to argue to the jury. The jury is going to decide this case in accordance with the testimony, not with your arguments.—Attorney Ramos Antonini: Nor those of the district attorney.—Judge: Nor those of the district attorney either.''

The argument of the defendant is based on a false premise. He contends that the lower court did not permit him to deny that he had conceded that the testimony established a case of manslaughter. But the record shows that he rose during the closing argument of the district attorney and twice denied that he had made any such statement. It is difficult to see what more the defendant expected the court to do. Certainly

the court was correct in pointing out that the defendant could not argue his case at that time. It was for the jury to determine the facts and render a verdict after having heard all the testimony and the arguments of both parties. And the court correctly stated that the verdict would be based on the testimony, not the arguments. See *People* v. *Rivera,* 64 P.R.R. 623; *People* v. *Colón,* 65 P.R.R. 714.

We deem it appropriate to discuss the 23rd, 24th and 25th errors together. The 23rd error is based on the refusal of the district court to declare the verdict null on the alleged ground that the marshal had communicated with the jury in the absence of the defendant. The 24th and 25th errors are that the court erred in leaving the jury in the court house for an entire night without any opportunity for rest after 5 days of continuous work.

These three errors are based on a colloquy between the court and counsel for the defendant after the jury had returned its verdict convicting the defendant of voluntary manslaughter. The discussion was as follows: "Attorney S. R. Quiñones: Your Honor, in this case, which began Thursday of last week and has continued without interruption until today, including working on Saturday, a day on which the courts generally do not work, something has occurred that the defense must note as well as protest at the action of the court and take exception to this action. Last night, after a day of hard, continued, uninterrupted work, the jury took the case about 10:30 p. m. because it had been submitted by the parties and on the basis of the instructions given by the court. According to the information that the defense has, the jury had not been given the opportunity to lie down or rest in any hotel in this locality or in San Juan, despite the fact that it had been working without interruption from 8:30 until 10:30 p. m. Nor, according to the information of the defense, was the jury given any means even within the court house to have some hours of rest after such arduous labor.

There is not in this court a couch or even a chair that has a pillow where the jurors may rest before beginning to deliberate in a case of this nature.—Judge: And in what way does that affect the verdict?—Attorney S. R. Quiñones: A bed of his own for a person to rest in, for a person who has been working 14 hours without rest. We contend that in that situation, last night, there was no deliberation of the jury, because it is not possible, physically, that there was any deliberation of a jury. We contend that if there has been a verdict it was the product of a situation of fatigue in which the jury found itself, and we pray that the verdict of the jury be declared null.—The Court: Call the jurors (the greater part of the jurors had already left the court). Just as it brought a verdict convicting the defendant, it could have acquitted him. *Last night the jury advised the Court, through the Marshal, that it wished to remain and deliberate. And you were here when the Marshal told me that they had stated that they wished to continue deliberating.*—Attorney S. R. Quiñones: I wish to inform Your Honor that this attorney was not present.—The Court: Attorney Ramos Antonini or Fournier.—Attorney S. R. Quiñones: Attorney Fournier was present when this occurred?—Attorney Fournier: I do not remember.—Attorney S. R. Quiñones: We wish to indicate in addition, to Your Honor, with the permission of the court, that this attorney left the court at 12:30 or 1:00 a. m., and that at that time the jury was, according to what this attorney was advised, deliberating. This attorney arrived at the court early this morning.—The Court: The Court believes, not believes but is sure, that *the jury sent word with the Marshal that it wished to continue deliberating, where it was. For that reason the court left them there.* The court wishes to make it known, in addition, that if there had been any necessity to obtain a hotel, it would not have been possible to obtain it because all the hotels in San Juan were called and none of them had room for a jury and even less could it be

obtained here. Just as the jury could have brought a verdict of conviction, it could have brought a verdict of acquittal. The court believes that the verdict has been the free expression of the jury in convicting the defendant of voluntary manslaughter. It might have brought a verdict of murder in the first or second degrees or it might have acquitted and what it did was to bring in one the same as in the previous trial. Overruled.—Attorney S. R. Quiñones: Exception.'' (Italics ours).

The language of the court must be read in its context. In stating that the jury had informed the court through the Marshal that they wished to continue deliberating where they were and that the court had left them there for that reason, the court was addressing itself to the argument which counsel for the defendant had just made that there had been no deliberation of the jury because of the physical conditions under which it had been compelled to work. It is therefore obvious that the communication by the jury to the court—whether it was originated by the jury or was in response to an inquiry from the court or the Marshal is irrelevant for present purposes—was on the subject of the comfort of the jury. There was therefore no communication between the court and jury of the type prohibited by *People* v. *Saldaña*, 66 P.R.R. 181.

This communication was unlike that in the *Saldaña* case where the jury sent word through the Marshal that it desired to return to the court room as it could not agree, and the court instructed the jury through the Marshal to continue deliberating. That was a communication by the court to the jury concerning the case itself outside the courtroom and without the presence of counsel. But here the communication was that the members of the jury were sufficiently comfortable to continue their deliberations in the place where they were located. And as we pointed out at p. 183, footnote 2, of the *Saldaña* case the rule prohibiting such communications ''is not applicable to those communications foreign to

the case which are required for the comfort of the jury, such as those dealing with food and lodging for the jury."

■ The 24th and 25th errors require scant consideration. The physical arrangements for the comfort of the jury during their deliberations are within the discretion of the district court. See § 273 of the Code of Criminal Procedure. The statements of counsel for the defendant and the court which we have quoted show there was no abuse of this discretion, and that the complaint of the defendant was an afterthought because he was dissatisfied with the verdict.

The 26th error is that the verdict is contrary to the law and the testimony. In arguing this error, the defendant merely summarizes several of the errors which we have already discussed. We have examined the record and find that it contains testimony which amply justifies the verdict of the jury.

The judgment of the district court will be affirmed.